Good morning. Good morning, Your Honor. My name is Jerry Tarutis. I'm representing Kelly Young, the plaintiff-appellant in this case. I would like to reserve four minutes for rebuttal of my time. Sure. Please keep your eye on the clock, and I'll try to remind you as well. Thank you. I also want to start off by focusing in this case on the rejection of the vocational expert's testimony by the administrative law judge, or ALJ, at the administrative hearing that took place. Ms. Young is considered a person of approaching advanced age by the Social Security Administration because she was in her 50s. She had been denied supplemental security income, SSI, disability benefits, and ultimately had an administrative hearing before an administrative law judge or an ALJ. At the hearing, she testified. I also was there, and I examined her as well. Then the administrative law judge called a vocational expert to ask hypothetical questions because the case at that point had proceeded to what's called step five in the five-step analysis, so that the burden was then on the commissioner to establish that Ms. Young could work, that she was not disabled. I agree that it may have been unusual for the ALJ to seek a second vocational expert after the first expert testified. There were no jobs available, but tell me why you did not take the opportunity to examine that first expert and make a record of the support that there may have been for her conclusion. Well, I don't think it was necessary, Your Honor, with all respect. She was already certified as an expert. The administrative law judge had accepted her as an expert witness. I accepted her as an expert witness. She was asked a hypothetical question. She answered the hypothetical question. To go on further, the burden of moving forward at that point was on the commissioner, not on me, and not on my client. She said there were no other jobs. If the administrative law judge had any concerns about her testimony, the administrative law judge could have asked her questions, could have asked her other hypotheticals, could have gone to other places, could have tried to figure out what the basis for her answer was. All of what you've just said equally applies to you. You could have chosen to find out the basis for the hypothetical and whether the hypothetical was correct and whether those jobs were, in fact, available or not, but you sat mute. Because the burden is not on me. I understand, but at the point that she said she was going to call another expert. I did object. I know you objected, but you could have taken the opportunity to question the first expert. I could have, Your Honor, but it was a judgment call that one makes in a hearing that you have to do the best you can. And I will say that I believe that the language in Ishe on page, in the decision that says, once the vocational expert testifies that the plaintiff was totally disabled, the ALJ was not legally entitled to come up with reasons for dismissing the testimony. And that's what happened here. I mean, the truth of it is she didn't like the answer, and she stopped at the answer. She had predetermined what the answer was going to be. This was not asking a true hypothetical. This was asking a hypothetical where she believed she knew what would happen, and that was apparent from her reaction to the question. Was the second vocational expert wrong when at least two jobs were identified for your client out of folder or housekeeper? Yes, she was wrong. Why? And we've argued that because the jobs that she identified, the folder job, if I have them right, was working in a laundry, and there are hazards there. There's temperature, high humidity. Hazards were excluded. What portion of the DOT definition for folder points to a hazard? It's in the selected characteristics of the jobs. What's the hazard listed there? What hazard is listed there? High heat, high humidity, and one other thing. Is that listed as a hazard there? It's listed as a hazard, yes, and it's citing in our memorandum, in our briefs. And the second job was you had to – So I know you argued – I apologize if I missed it. I know you argued that those are hazards, but does the dictionary actually itself say these are hazards? The selected characteristics of the job defines what hazards are. And hazards are high heat, electricity, high humidity. These are all considered job hazards because they can cause additional problems. You're saying selected characteristics equals hazard? No, that's the name of the publication, Your Honor, and it defines what hazards are for the DOT. And so in the same way, the second job was the ALJ in her hypothetical had excluded close contact with the public. The second job involves handing towels directly to people, dealing with people on a more close, personal basis, and that would have excluded that job as well. What was your evidence that a hotel housekeeper has to have lots of contact with the public? It's not clear to me that that's the case. That's part of the job definition is delivering towels to people. I didn't make this up. Right, so delivering towels to people. But what in the medical evidence about your client said that she couldn't have that brief an interaction where you just deliver a towel to a person? The judge's hypothetical excluded dealing with the public as one of the conditions of her hypothetical. More than superficial contact, why isn't handing a towel to someone superficial conduct? Because it involves dealing with people on an interactive basis, Your Honor. I mean, this is not superficial. How often do you interact with a housekeeper at a hotel? More than superficially. Well, you know, I'm noted for talking too much, Your Honor. So actually, I will tell you, when I go to a hotel, I know most of the housekeepers by the time I leave, but that could be me. I find, however, that people do interact with housekeepers. I do. A lot of other people do. And the point is that if the ALJ is going to exclude or reduce the ability to superficial contact with the public, without defining it beyond that, and this job says you have to deal directly with somebody else, that is not superficial if you're dealing with them on a direct basis day to day in a job. It's our opinion that these two jobs, therefore, would have been excluded. And if they are excluded, that means the second expert said the same thing as the first. More importantly, I believe that because the second expert was improperly rejected, you would never get to the second. The first expert was improperly rejected. You would never get to the second one. And that's basically what they said in Ishe as well. That when you follow the law, you've got an expert, you accept that expert. They say in footnote 15 in the decision that the burden is on the ALJ to develop the record if he or she has any concerns about the expertise. Let's say that we agree that there's something unusual about excusing the first expert to call up the second expert, but that the record supports the second expert's vocational expert's findings or testimony. What do we do then? One, I don't think the record does support it. Two, I think that vocational experts, as they said, as the district court said in Ishe, vocational experts give varying opinions. That's why they're experts. If we know what they're going to say, we can have a record and just play it for every case. Different experts have different perspectives on various jobs and various limitations. Do you have any case, though, that says where there's a reason for rejecting an expert? I know that there are cases that say if you arbitrarily reject someone, it's not okay. But this ALJ gave some reasons for rejecting the first, said that she thought the testimony was inconsistent with the dictionary, occupational titles, and said it's my obligation to get this right, so I'm going to call another expert. Do you have any case that says you can only have one expert in a case? No. But I believe that due process and fundamental fairness require that if you're going to say that the vocational expert is wrong, which is what she said, you have to have some basis for that. She had no basis when she made that ruling. She just said the basis is that I find that your testimony that there are no jobs available inconsistent with the DOT. That's not what she said. I think that it would be a problem if she didn't give you the opportunity to probe further before excusing the first vocational expert, but you have the opportunity to question her as to why she made that opinion. Your Honor, first of all, when she said her testimony was inconsistent with the dictionary of occupational titles, she didn't say why. We don't know what she thought. I have no idea what she meant by that. But then we get the second expert who points to jobs. I mean, I'm still trying to figure out your argument about the hazards, so I'm looking at the dictionary definition of this folder job, and, yes, it talks about – I mean, it says it might be humid, and it says there's a moderate noise level. It says extreme heat occasionally, but it doesn't say these are like some kind of category of hazards that match up to some kind of category of hazards. It just lists that, okay, sometimes there's some heat. But what in your client's medical history means that she can't deal with a clothes dryer? Your Honor, the hypothetical says she can't deal with hazards. That's by definition what the ALJ defined as a hazard. And what I'm telling you is that the heat, humidity are hazards. According to what expert? I'll try to find it here in a minute, Your Honor. But that's the – while I'm looking, I'll also try to answer your question. The other part of this is that, again, the burden is on the administrative law judge. This expert was certified as an expert. She gave an opinion. And then when the judge didn't like it, she said, I'm going – this is contrary to what other vocational experts have said. That's not a valid basis. You have about four minutes left, so I want to remind you that you wanted to save that. But perhaps when you get back up again, if you have a particular definition of hazard, you might want to point us to that record. I would think that would be a good idea as well, Your Honor. Thank you. Good morning. May it please the Court, Jeff Staples for the Commissioner. We would ask that this Court affirm the district court's judgment because the ALJ's decision is supported by substantial evidence and free of legal error. As Your Honor pointed out, the ALJ has an obligation to get it right, not just to accept vocational expert testimony, whatever that testimony may be. Doesn't she also have an obligation, or he, to test the conclusion of that expert if they're going to dismiss that expert by, in this case, for example, referencing specific jobs the ALJ believed were available to Ms. Young, testing that expert's conclusion instead of abruptly dismissing the expert? It's not my understanding that the ALJ has the same resources as a vocational expert, such that she would be able to go in and say, okay, here's the RFC, and so I know that there are these jobs. If ALJs could do that, there would be no need for vocational experts. But what the ALJ did was she took her expertise as an ALJ. She took numerous hearings, numerous vocational expert testimonies, and did the right thing and said, you know what, I don't think this is accurate. I don't think this is right. And so an ALJ can no more rely on erroneous VE testimony to pay a case than they can to not pay a case. So the ALJ did the right thing and said, let's get some more evidence here. Rather than just terminating the process and saying, you know, this is not consistent. I know there are other jobs out there. I don't know what they are, but that's why this person is not disabled. The ALJ went ahead and got another vocational expert, and that vocational expert, who had the resources to compare the RFC with the Dictionary of Occupational Titles, said, here are the jobs that this person can do. Does this happen very often? It seems very unusual from my limited perspective. I haven't seen anything like that before. I have. I've seen, well, opposing counsel points to Ishe, so I've seen cases in which ALJs may call multiple VEs, but Your Honor is correct that this is not a common occurrence. But this case is not about a vocational expert's qualifications. The ALJ did not say, this vocational expert is just not qualified to give testimony. So the suggestion that she should have objected or should have dismissed the vocational expert on that basis is not what the ALJ did here. And Ishe is actually instructive. In that case, the ALJ gave what the court described as a spectacularly offensive reason for dismissing the vocational expert testimony. Here, the ALJ just said that that testimony is not consistent with the Dictionary of Occupational Titles and is rejected. That's a proper reason. There's no law, there's no regulation, there's no even guidance that an ALJ should not call multiple vocational experts when that's warranted. In fact... How does the process work in terms of vocational experts? Is it computerized and the ALJ randomly orders up a vocational expert? Give me some insight into exactly how that works. I wish I had more insight, but I believe it's just they have a pool of vocational experts and they're randomly assigned. So I don't know how beyond that what happens. I know that the ALJ in this case asked for a new one. I don't know how they picked the new one. I don't think ALJs do that personally, but opposing counsel would have a better idea of that than I would because he's been to hearings more frequently. It seems like the ALJ also said something about this vocational expert being new and you're not trying to defend that anymore. Can you explain a little bit about what happened in that regard? Well, I think this is speculation on my part, but I think the ALJ at the hearing was trying to help the BE save face and not say, I've seen a lot of hearings and you're obviously way out of line and that's erroneous. The ALJ was trying to say, okay, you're new to this. I don't think that's right. I'm going to get another BE in here. And it doesn't look like that was a reason that the ALJ gave for rejecting the BE because the ALJ said that the reason it was rejected was that it was not consistent with the DOT. I think the ALJ was trying to explain why that BE might have given testimony that was inconsistent. But that wasn't right. The BE was not fairly new. Well, to the extent that was an erroneous reason, the ALJ's other reason that the testimony was demonstrably inconsistent, which was what the second BE showed, was correct. Can you address counsel's argument regarding the hazard? Yes. Looking at the folder occupation, as you're on it. The folder has exposure to extreme heat one-third of the time and moisture water two-thirds of the time. Aren't those hazards? Those are not hazards because the dictionary goes on to describe things like electric shock, high exposed places, radiation, explosive, toxic, caustic chemicals. These are hazards. Heat and humidity. Walk outside. That's not a hazard. Moreover, even if that is a hazard and I'm mistaken, there's still the cleaner housekeeper position, which exists in more than significant numbers in the national economy. And the mere fact that perhaps on occasion maybe opposing counsel has more than superficial interactions with a housekeeper at a hotel does not make that a requirement of the job. The dictionary says that for the cleaner housekeeper position, dealing with people is, quote, not significant. So when the ALJ said, didn't say she could have no interaction with the general public, she said she could have no more than superficial interaction with the general public. And so when the vocational expert testified that such an individual could perform the housekeeping cleaner position, that's consistent with the dictionary of occupational titles. So contrary to the assertion that an ALJ may not get second V.E. testimony, Massachi and SSROO-4P require an ALJ to be involved in the process of eliciting correct vocational expert testimony that is consistent with the dictionary of occupational titles. And that's what the ALJ did here, fulfilling her obligation to get the right result, whether it goes for the claimant or against, the testimony needs to be consistent with the dictionary of occupational titles. Could the ALJ have brought the first one back for the second hearing? It would have been sort of nice to see the two experts dueling, if you will, and explaining their respective differing opinions apparently. I think that might have been another way to go, but again, I'm aware of no requirement that an ALJ do that. And it's certainly within the ALJ's province to look at contradictory testimony and give a reason to choose one over the other. And here that reason was certainly supported by substantial evidence, demonstrably by looking at the dictionary of occupational titles for the jobs that the second vocational expert identified. So unless there are further questions on this issue, I will also say that the ALJ's reading, since I have a little bit of time, the reading of the rest of the record as for the medical opinions. You don't have to use it, no. Thank you. I'll be very brief here just to say that the ALJ's reading of the rest of the medical evidence and the claimant's testimony is supported by substantial evidence in terms of repeated mental status examinations and x-ray findings that were all very normal. So unless there are further questions, I will leave the rest of my time on the table. All right. Thank you very much. Your Honor, on page 10 of our opening brief, footnote 3, we referenced the folder occupation which is selected characteristics of occupations that companion volume to the dictionary of occupational titles that list environmental demands. And I'll just leave you with that. There are a couple points that I want to make in the short amount of time that I have left. The reason we have a vocational expert is so you all and I and the judge do not have to speculate what hazards are, how much contact you have with a housekeeper in a hotel or not. That's what the job of the vocational expert is. And in this case, the vocational expert made a decision that that hypothetical did not allow for any jobs. The burden was on the judge, the AOJ, to ask her why she thought that. How did she come up with that? It's not on me and it's not on my client. The judge should have developed. It's her burden. See footnote 15 in each day. The other thing is that this allows the judge, any time she doesn't like the testimony of an expert, to go find somebody else. That's not fair. We don't get to select the experts. And E. Shea says very clearly, the experts are certified by the Office of Hearings and Appeals. Then they are assigned randomly to the AOJs. Once the AOJ accepts the V.E., then they have no right to challenge the V.E. or not to accept their testimony. Is it your position then that once selected, the AOJ must accept that V.E.'s testimony no matter what? That's what E. Shea says. Is that what you say? I would say, Your Honor, yes. Once the AOJ gets the V.E.'s resume and reads it and has a chance to ask some questions, then once they're certified as an expert, they're an expert. They may not agree with what she says and they may want to ask her questions about how did she get to that point, why did she say that, but maybe who knows? I don't know what she was thinking. Maybe she says, yeah, people in hotels do have to deal a lot with the public. That would be her expert opinion. That's why we have experts. Wouldn't that be inconsistent with the Dictionary of Occupational Titles? It says not significant or whatever the exact wording is. It depends on not significant is a word of art. Not significant or whatever the word is, the vocational expert has the expertise to say, yes, this may not be significant, but under your hypothetical, it's excluded. That's why we have experts. For you and for the AOJ to say, to go outside of the record in an administrative case and say, I know what's going on over here. I've been down this road before. She's making a decision based on other experts that are not present that are testifying against my client that even if I wanted to ask them, I don't know who they are or where they came from or what they said and what she believes they may have said. Could you say again where you said the hazard thing is? It took me a minute to pull up your reply brief. I'm sorry. Page 10, footnote 3. Of your reply brief? Of the opening brief. I think it's called the opening brief. Finally, it's the expert's opinion to determine whether heat and humidity are hazards. That's what her job is. The thing is, this is the situation just like in Ishe where the person said something the judge didn't like. As the district court said in Ishe, and I think this court should say as well, when by the luck of a draw you've been signed as a vocational expert who testified that the plaintiff was totally disabled, the AOJ was not entitled to contrive legally insufficient reasons for dismissing the testimony. That's what happened. She didn't know what the new expert was going to say. When she dismissed that expert, she made up the reasons. Even if she said she can't go back, call a new expert, and then say, Aha, I was right. You were wrong. That's not fair. She had an expert there. The expert testified. She didn't like the testimony. She should be held to the same burden. Thank you very much. All right. Thank you very much, both sides, for your arguments. The matter is submitted for decision by this court.
judges: Zouhary, Nguyen, Friedland